UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LARRY NOLEN, and<br>CAROL NOLEN,<br><br>    Plaintiffs,<br><br>vs.<br><br>COUNTRY MUTUAL INSURANCE CO.,<br><br>    Defendant. | Case No. 4:04CV1567 JCH |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment, filed July 26, 2005. The matter is briefed and ready for decision.

## BACKGROUND

This is a dispute over insurance coverage for injuries from a car accident. Plaintiff Larry Nolen was injured when Andrew Yanick's car crossed the center line and struck Nolen's car. Yanick's action might have been caused by a third driver (the "phantom motorist"). At the time of the accident, Nolen held an automobile insurance policy with Defendant Country Mutual Insurance. Nolen settled with Yanick for $100,000.00, the limit of Yanick's insurance policy. Nolen now seeks to recover from Country Mutual under his own policy.

Larry and Carol Nolen filed the complaint in the instant matter in Circuit Court of the City of St. Louis on October 8, 2004. They allege that Country Mutual breached its contract of insurance

1

by failing to compensate Larry for injuries sustained that were covered by the terms of his insurance policy. Larry Nolen seeks recovery under four counts: I) the uninsured motor vehicle provision of the policy; II) the medical payments provision; III) vexatious refusal to pay under an insurance policy; and IV) the underinsured motor vehicle provision of the policy. His wife, Carol Nolen, seeks recovery under Count V, for her own damages due to her husband's injuries.[1] (Notice of Removal, Doc. No. 1, attached exh. ("Complaint")).

Defendant Country Mutual removed the action to this Court on November 12, 2004 on the basis of diversity of citizenship. (Notice of Removal, Doc. No. 1). Country Mutual filed its Motion for Summary Judgment on July 26, 2005. (Doc. No. 9). It moves for summary judgment on Counts IV and V, and partial summary judgment on Count I. The matter is ready for disposition. For the reasons stated below, the Court grants in part and denies in part Country Mutual's motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477

---

[1] Because Larry Nolen is the only physically injured plaintiff in this suit, the Court will refer only to him and not to his wife in its discussion.

U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249.

As a federal court sitting in diversity, this Court must apply the laws and policies of the State of Missouri in construing this insurance policy. Altru Health Sys. v. Am. Prot. Ins. Co., 238 F.3d 961, 962 (8th Cir. 2001). The Court looks first to decisions of the Missouri Supreme Court. Blum v. Allstate Ins. Co., 296 F.Supp.2d 1037, 1039 (E.D.Mo. 2003). If no relevant decisions are available, the Court will look to Missouri appellate court decisions. Id. The task is "to determine how the Missouri Supreme Court would decide the issue at hand." Id.

Whether an insurance policy is ambiguous is a question of law. Gulf Ins. Co. v. Noble Broad., 936 S.W.2d 810, 813-14 (Mo.1997) (en banc). "The language in an insurance contract should be given its plain meaning." Melton v. Country Mut. Ins. Co., 75 S.W.3d 321, 324 (Mo. Ct. App. 2002). An insurance policy is ambiguous "where there is a duplicity, indistinctness, or uncertainty

in the meaning of the words used. . . ." Kyte v. Am. Family Mut. Ins. Co., 92 S.W.3d 295, 299 (Mo. Ct. App. 2002) (citing Rodriguez v. Gen. Accident Ins. Co., 808 S.W.2d 379 (Mo. 1991) (en banc)). If there is a conflict "between a technical definition in a contract and the meaning which would be reasonably understood by the average layperson, the layperson's understanding will be applied unless it is clear the technical meaning is intended." Id. "When there is an ambiguity, insureds are entitled to a resolution of that ambiguity consistent with their objective and reasonable expectations as to what coverage would be provided." Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo., 992 S.W.2d 308, 316 (Mo. Ct. App. 1999). A court may not, however, "create an ambiguity to distort the language of an unambiguous policy." Id.

## **DISCUSSION**

As stated above, this dispute arises out of a car accident involving Larry Nolen, Andrew Yanick, and possibly a third driver[2] (the "phantom motorist"). Larry Nolen was injured in the accident. Nolen settled with Yanick for $100,000.00, the limit of Yanick's insurance policy. Country Mutual is Larry Nolen's insurer, and has not paid anything on his policy. There are two portions of Nolen's coverage that are in dispute: uninsured motor vehicle coverage, and underinsured motor vehicle coverage.[3]

The disputes involve stacking coverage, and whether Country Mutual can setoff Yanick's settlement from its own liability under the policy. In general, insureds may stack coverage from

---

[2] The existence of the third car is not an issue in the summary judgment.

[3] The uninsured motor vehicle is the phantom motorist, and the underinsured motor vehicle is possibly Yanick.

multiple cars covered under one policy. "'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." Niswonger, 992 S.W.2d at 313. An insurance contract may include a setoff provision, allowing the insurer to deduct amounts paid by other legally responsible parties from its own liability. Couch on Insurance § 171:37 (3d Ed.)

### A. The Insurance Policy

The Nolens have two cars that are covered by their Country Mutual policy. Each car is covered up to $100,000.00 for each person injured by an uninsured driver, and $100,000.00 for each person injured by an underinsured driver. (Motion for Summary Judgment, Doc. No. 9, attached exh. 4 "Declarations").

The insurance policy at issue contains the following provisions:

**SECTION 2**

**Uninsured-Underinsured Motorists,**

**Coverage U**

If **you** have Underinsured Motorists coverage . . . :

a. The limits of liability for this coverage will be reduced by the total payments of all bodily injury liability insurance policies applicable to the person or persons legally responsible for such damage.

. . . .

**Definitions, Section 2** . . .

2. **Underinsured motor vehicle** means any type of motor vehicle or trailer for which the sum of all liability bonds or policies at the time of an accident are less than the limit of this insurance.

. . . .

**Conditions, Section 2** . . .

2. **Limits of Liability**. The Uninsured - Underinsured Motorists limits of liability shown on the declarations page apply as follows:

a. The limit of liability for "each person" is the maximum amount **we** will pay for all damages arising out of bodily injury to any one person in any one accident. That maximum amount includes any claims of other persons for damages arising out of that bodily injury.

The figure listed is the most **we** will pay for any one person in any one accident regardless of the number of **insureds**, claims made, **insured vehicles**, premiums shown on the declarations page, or **uninsured or underinsured motor vehicles** involved in the accident.

c. Amounts payable for damages under Uninsured-Underinsured Motorists, Coverage U, will be reduced by all sums paid by or on behalf of persons or organizations who may be legally responsible for the bodily injury. . . . (Motion for Summary Judgment, Doc. No. 9, attached exh. 3 "Policy").

### B. <u>Uninsured Motor Vehicle Coverage</u>

By statute in Missouri, all automobile insurance policies must include uninsured motorist coverage. Mo. Rev. Stat. § 379.203. Uninsured motorist coverage provides coverage for injuries caused by uninsured drivers. <u>Id.</u> Both parties agree that in Missouri, insureds may always stack uninsured motorist coverage. <u>See</u> <u>Cameron Mutual Ins. Co. v. Madden</u>, 533 S.W.2d 538, 544-45 (Mo. 1976) (en banc). Stacking Nolen's coverage would result in $200,000.00 of uninsured motor

vehicle coverage available under Nolen's policy.

Country Mutual, however, argues that, according to the language of the policy, it may setoff the $100,000.00 that Nolen received from Yanick against that $200,000.00, leaving $100,000.00 in uninsured motor vehicle coverage.

Nolen disagrees, asserting that, when read together, the language of the limits of liability[4] and setoff[5] sections are ambiguous, rendering the setoff section unenforceable. He argues that the "repeated expression of 'the most we will pay' and 'the maximum amount we will pay' as well as the bolded emphasis of the word 'we' could lead a reasonable lay person to believe that the policy provides protection in excess of payments received from other sources. He asserts that the language is open to the interpretation that defendant's limit of liability is calculated independently from the sums received as a result of 'other claims made.'" (Memorandum in Opposition, Doc. No. 12, at 6).

The Court does not agree that the two provisions are ambiguous. The setoff provision states that amounts due under uninsured-underinsured motor vehicle coverage is reduced by amounts paid by other legally responsibly parties.[6] The policy's use of "the most we will pay" and "the maximum we will pay" merely sets the upper limit for Country Mutual's liability, a limit that is then reduced by the setoff provision. The word 'we' is in bold because it is a defined word in the policy.[7] None of

---

[4] Conditions, Section 2, 2.a.

[5] Conditions, Section 2, 2.c.

[6] In the discussion of underinsured motor vehicle coverage, Nolen argues that the setoff provision is ambiguous because it is not clear whether amounts are setoff from the uninsured coverage, underinsured coverage, or both. The Court finds that amounts are to be setoff from the total of uninsured and underinsured motor vehicle coverage.

[7] Page 1 of the policy tells readers to "[p]lease note the Definitions section for words you'll find in boldface type throughout your policy." (Policy, at 1).

7

these elements render the uninsured motor vehicle coverage provisions ambiguous.

As the policy sections relating to uninsured motor vehicle coverage are not ambiguous, Nolen's $200,000.00 in uninsured motor vehicle coverage is setoff by Yanick's $100,000.00 settlement. Country Mutual thus has potential liability of $100,000.00 under Nolen's uninsured motor vehicle coverage.

### C. <u>Underinsured Motor Vehicle Coverage</u>

In Missouri, insurance contracts may prohibit stacking underinsured motorist coverage. <u>Rodriguez</u>, 808 S.W.2d at 379. Nolen's policy contains an anti-stacking provision. The policy defines underinsured vehicle as "any type of motor vehicle or trailer for which the sum of all liability bonds or policies at the time of an accident are less than the limit of this insurance." (Policy, at 6).

Country Mutual contends that Yanick is not an underinsured vehicle under the definition in the policy, therefore Nolen has no underinsured motor vehicle coverage available. It asserts that because of the anti-stacking provision, the limit of underinsured vehicle coverage is $100,000.00. The sum of Yanick's liability policies at the time of the accident was $100,000.00. Because the sum of his policies is exactly the same as the limit of the insurance, Country Mutual argues that Yanick is not an underinsured motorist.

Nolen disagrees. He first asserts that the anti-stacking language is ambiguous when read with the definition of underinsured motor vehicle, allowing $200,000.00 in underinsured motor vehicle coverage. He believes that the anti-stacking provision and the definition of underinsured motor vehicle contradict each other: "[t]he policy defines an 'underinsured motor vehicle' as 'any type of motor vehicle or trailer for which the sum of all liability bonds or policies at the time of an accident

are less than the limit of this insurance.' The definition contains the phrase 'the limit of this insurance' without qualification." (Memorandum in Opposition, Doc. No. 12, at 7).

Nolen then asserts that the language of the setoff provision is ambiguous, so Country Mutual is not entitled to setoff the $100,000.00 settlement from Yanick. He states that "[t]he set-off language contained in the policy is not clear with respect to whether any settlement received acts to offset a claim under the uninsured motorist coverage, the underinsured motorist coverage, or both." Id.

The Missouri Court of Appeals has considered the definition of underinsured motor vehicle in an insurance policy identical to this one, and found it to be unambiguous. Melton, 75 S.W.3d at 325-26. Nolen distinguishes Melton because Nolen points to a different alleged ambiguity in the policy. While this is true, Nolen does not cite any other authority to support a finding of ambiguity, and the Court finds his arguments unpersuasive.

The Court agrees with Country Mutual, and finds the language unambiguous. The definition of underinsured motor vehicle leads to the limits of liability section to determine the limit of liability for underinsured motor vehicle coverage. That section unambiguously states that the limit of liability for underinsured motor vehicle coverage is not stacked. The declarations page shows that the unstacked limit of liability for underinsured motor vehicle coverage is the same as Yanick's policy limit.

Yanick does not qualify as an underinsured motor vehicle, so Nolen has no underinsured motor vehicle coverage available for this incident.

**D.     Carol Nolen's Claims**

Country Mutual has also moved for summary judgment on Count V, Carol Nolen's claims. Although the suit is titled one for breach of contract (Complaint, at 1), Count V includes claims for both Carol Nolen's indebtedness as a result of her husband's injuries, and for her loss of consortium. (Complaint, ¶¶ 27-28). Because neither party has addressed this count, the Court denies Country Mutual's motion for summary judgment on Count V.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment on Count IV and for Partial Summary Judgment on Count I of the Complaint is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment on Count V of the Complaint is hereby **DENIED.**
.

Dated this 23rd   day of November, 2005.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE